**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| | § | |
| **HERB LANCASTER, ET AL.** | § | **CIVIL ACTION NO. 2:17-CV-00293** |
| | § | |
| | § | |
| **V.** | § | |
| | § | |
| **UTILITY SERVICE CO., INC., ET AL.** | § | **JURY DEMANDED** |
| | § | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
TANKEZ'S MOTION FOR SUMMARY JUDGMENT/MOTION TO DISMISS**

Plaintiffs file this response to TankEZ Coatings, Inc.'s Motion for Summary Judgment/Motion to Dismiss (Doc. 41). Because fact issues remain for trial TankEZ's Motion for Summary Judgment should be denied. The Motion to Dismiss likewise should be denied.

**I.    Natured of the Case.**

The 60 year-old elevated water tower in Aransas Pass was in a state of disrepair. The City hired USCI to inspect and renovate the water tower in 2013. USCI sub-contracted virtually all labor-aspects of the renovation project to TankEZ, save and except the inspections. The renovation project was completed in June, 2015.

The water tower collapsed on or about August 25, 2017, when subjected to wind loads attendant to Hurricane Harvey. The water tower was designed to and would have survived and withstood the wind forces if it had been repaired.

Lancaster's adjacent building, business and property were severely damaged when the dilapidated water tower collapsed.

II.    **Synopsis of Response.**

The City hired USCI to inspect and renovate the Aransas Pass water tower. USCI hired TankEZ to sandblast, prime, paint, and repair the water tower per USCI's direction.

Critical repairs were identified and specified, but not performed. As a result, the water tower collapsed and crushed Lancaster's building, equipment and property.

Fact issues exist as to the propriety of the renovation project performance, cause of the collapse, and extent of damages.

This Response to TankEZ's Motion for Summary Judgment sets forth the Case Facts, including (1) USCI's contract with the City that required "thorough inspections" and "engineering services to ensure structural soundness", and also provided that the scope of repairs included replacement of Wind Rods (that were never replaced), and (2) USCI's contract with TankEZ that included sandblasting, painting, welding and other repairs as directed by USCI.

This Response also includes Plaintiffs' expert opinions on tower deficiencies and causation of the collapse, and evidence of Lancaster's damages.

Lancaster also responds to TankEZ's dismissal motion, which should be denied because the conditions under which dismissal is sought have not occurred.

III.   **Case Facts.**

The Aransas Pass 500,000-gallon elevated Water Tower was built in the 1950s. The City of Aransas Pass ("City") entered a contract with Utility Service Co., Inc. ("USCI") on May 21, 2013 for tank inspection and renovation [**Attachment "A": Lancaster Exhibit 3**].

**Page 2**

**USCI-City Contract.** USCI's contract with the City outlines *"[USCI's] responsibility for the care and maintenance of the [water tower]. Care and maintenance include the following:*

*A. [USCI will] annually inspect and service the tank. **The tank and tower will be thoroughly inspected to ensure that the structure is in a sound...condition**."* (emphasis added) [**Attachment "A": Lancaster Exhibit 3, p. 1, excerpted below**].

> The Owner agrees to engage the Company to provide the professional service needed to maintain its 500,000 gallon water storage tank located at 235 East Wilson Avenue, Aransas Pass, Texas 78335 (hereinafter "tank").
>
> 1.   **Company's Responsibilities.**  This Contract outlines the Company's responsibility for the care and maintenance of the above described water storage tank.  Care and maintenance include the following:
>
> A. The Company will annually inspect and service the tank.  The tank and tower will be thoroughly inspected to ensure that the structure is in a sound, watertight condition.
> B. Biennially, beginning with the first washout/inspection, the tank will be completely drained and cleaned to remove all mud, silt, and other accumulations that might be harmful to the tank or its contents.  After cleaning is completed, the interior will be thoroughly inspected and disinfected prior to returning the tank to service; however, the Owner is responsible for draining and filling the tank and conducting any required testing of the water.  A written report will be mailed to the Owner after each inspection.

[**USCI-City Contract, Attachment "A": Lancaster Exhibit 3, p. 1**]

The USCI-City contract also provides *"**[USCI] shall furnish engineering and inspection services needed to maintain and repair the tank and tower . . . [including] steel parts, . . . sway [wind] rod adjustments[.]**"* (emphasis added) [**Attachment "A": Lancaster Exhibit 3, p. 2, excerpted below**].

> C.  The Company shall furnish engineering and inspection services needed to maintain and repair the tank and tower during the term of this Contract.  The repairs include: steel parts, expansion joints, water level indicators, sway rod adjustments, and manhole covers/gaskets.

[**USCI-City Contract, Attachment "A": Lancaster Exhibit 3, p. 2**]

USCI's Supervisor for this water tower project was Jimmy Asher. Asher testified

USCI knew the City wanted a **lump sum contract for renovation of the water tower**

**(including the Wind Rods and tower structure)**. Supervisor Asher testified as follows:

```
 6      Q     Yes.  Because the City wanted no surprises, no
 7   change orders?
 8      A     No change orders.
 9      Q     And -- and so that would be a -- a hard and
10   fast lump sum contract?
11      A     It would be a lump sum contract for the
12   renovation, yes, sir.
```

**[Asher deposition, Attachment "B", p. 18]**

```
 7      Q     Okay.  So USCI, under this contract, was not
 8   just focused on the water containing volume tank itself
 9   but also the leg structures and the -- and the rods
10   that -- that held that water tank in the air, right?
11      A     The steel structure, yes, sir.
```

**[Asher deposition, Attachment "B", p. 66]**

```
 8      Q     So everything down to the anchor bolts?
 9      A     Part of the tank.
10      Q     And the legs?
11      A     Yes, sir.
12      Q     Wind rods?
13      A     Yes, sir.
14      Q     Riser rods?
15      A     Yes, sir.
```

**[Asher deposition, Attachment "B", p. 67]**

The USCI-City contract documents provided for over $70,000 worth of repairs (out of a $500,000+ contract), including the replacement of certain Wind Rods:

| | |
|---|---|
| WR RISER RODS | $6,313.65 |
| WR WIND RODS | $9,757.45 |
| Repair Yr 1 Inflation % | 0% |
| Repair Yr 2 Inflation % | 0% |
| Repair Total: | $70,884.33 |

**[USCI-City Pricing Schedule, Attachment "C": Lancaster Exhibit 4, p. 3]**

**Tragically, none of the Wind Rods were replaced despite the contractual and engineering requirements in light of the deteriorated condition of those structural components** as discussed herein (see TankEZ and USCI testimony *infra* at pp. 15 – 16.)

The photographs below depict the horrific condition of typical Wind Rods from the collapsed water tower [**Affidavit of Travis Wells, PE, Attachment "D"**]:



**DILAPIDATED WIND ROD**



**DILAPIDATED WIND ROD CLEVIS**

**Page 5**

Wind Rods provide lateral stability for the tank structure, as discussed *infra* at p. 16 [**Affidavit of Travis Wells, PE, Attachment "D"**]. These and other Wind Rods and structural components, were wholly inadequate to provide the intended stability and support for the water tower [**see other component Photographs, Attachment "E"**].

**TankEZ Contract.** Unbeknownst to the City USCI entered a Master Service Agreement with TankEZ Coatings, Inc. ("TankEZ") on May 5, 2014—one year after USCI entered its contract with the City [**Attachment "F": Lancaster Exhibit 32**]. The USCI-TankEZ Master Service Agreement incorporated USCI's Service Requests [**Attachment "G": Lancaster Exhibit 27**], one or more of which referenced sandblasting, painting and certain repairs.

The USCI-TankEZ contract documents called for the replacement of certain Wind Rods—though the testimony from USCI and TankEZ on that issue is conflicting:



**Task Name:** Repairs      **Assignee:** N/A

**Task:**
1. (2) I Beams will need to be welded to the interior for containment support.
2. Catwalk should get 8 L Bracket supports welded underneath each leg for support.
3. Antenna and coax Retrofit on Catwalk and Legs.
4. Replace Hinges on Existing 24" Hatch.
5. Run new power from ground to obstruction light--(Conduit and Wiring)--Sub Contractor will need to perfrom work.
6. Replace Top 5 Riser Rods.
7. Replace 3-5 Wind Rods.

**[USCI Service Request, Attachment "G": Lancaster Exhibit 27, at p. 5]**

The USCI Service Request entry assigning "***Task #7: Replace 3-5 Wind Rods***" is part of the USCI-TankEZ contractual documentation. USCI likely will use this assignment to support its claim that TankEZ failed to do something it was contractually obligated to do—even though USCI's Corporate Representative testified otherwise.

**Page 6**

USCI Supervisor Jimmy Asher confirmed **it was USCI's responsibility and decision to inspect and determine which water tower Wind Rods needed replacement**.

Supervisor Asher made it clear **this absolutely was USCI's project, and under USCI's complete, unfettered control**, despite the fact it subcontracted some labor-aspects of the project to TankEZ.

| 24 | Q    So, just so that you and I are clear, USCI was |
| --- | --- |
| 25 | in control of what components, what structural members |

| 1 | needed to be repair and replaced? |
| --- | --- |
| 2 | A    Yes, sir. |
| 3 | Q    And USCI was responsible for determining which |
| 4 | ones needed to be replaced? |
| 5 | A    Yes, sir. |
| 6 | Q    And USCI was responsible for -- for how those |
| 7 | were replaced? |
| 8 | A    Yes, sir. |

[Asher deposition, Attachment "B", pp. 42 – 43]

| 21 | Q    Who made decisions on what wind rods and riser |
| --- | --- |
| 22 | rods were replaced? |
| 23 | A    That would be me and we rely on the inspector |
| 24 | and I think at the time, that was Gary Paste and |
| 25 | Antonio Ramirez saying, "Hey, these look bad." |

[Asher deposition, Attachment "B", p. 26]

```
 6      Q     Thank you, sir.  Now, certainly, USCI didn't
 7   turn this project over to F & F or E -- EZTANK?
 8      A     No, sir.
 9      Q     F & F and EZTANK was providing whatever their
10   skill set is to assist USCI?
11      A     Yes, sir.
12      Q     It was still a USCI project?
13      A     Yes, sir.
14      Q     USCI was still in charge of the project?
15      A     Yes, sir.
16      Q     Still responsible for the project?
17      A     Yes, sir.
18      Q     And if F and F or EZTANK failed to do
19   something, that would be USCI's -- under USCI's
20   umbrella?
21      A     Yes, sir.
```

**[Asher deposition, Attachment "B", p. 41]**

Note, the references to "EZTANK", "Easy Tank" and "F & F" are due to Asher's confusion on the subcontractor's actual name, which we now know is "TankEZ Coatings, Inc." (see Asher deposition, pp. 26 – 27, 38 – 41).

```
 1     Q     And so, we'll get to that.  Do you know if --
 2   if Antonio Ramirez is with Easy Tank?
 3     A     He's currently Easy Tank.  At the time, I think
 4   it was F & F.
```

**[Asher deposition, Attachment "B", p. 27]**

TankEZ's owner and Corporate Representative, Antonio Landaverde, confirmed what USCI's Supervisor testified to regarding USCI's control over the tower renovation.

Specifically, Landaverde testified that the water tower renovation was USCI's project and **TankEZ had no authority to do anything USCI did not instruct it to do**.

```
10                    If Jimmy Asher told you to go right and
11   you wanted to go left, which way would you have gone?
12        A.  Well, I have to listen to him.
13        Q.  You had to follow Jimmy Asher's --
14   directions?
15        A.  Yes, sir.
16        Q.  He would tell you what to do and how to do
17   it?
18        A.  Oh, yes, sir.
19        Q.  Did you ever do anything on the Aransas Pass
20   water tower project that was not approved by Jimmy
21   Asher?
22        A.  No, sir.
23        Q.  All of your instructions came from Jimmy
24   Asher?
25        A.  Yes, sir.
```

**[Landaverde deposition, Attachment "H", p. 11]**

```
14        Q.  You didn't have any authority to do anything
15   different than what they told you to do.
16        A.  No, sir.  We can't change anything.
```

**[Landaverde deposition, Attachment "H", p. 132]**

**Page 9**

USCI Supervisor Asher confirmed it was **USCI's responsibility to determine which structural components needed to be replaced and to actually replace them**.

| 9 | Q    And so, if the jury determines that -- that |
|---|---|
| 10 | there were certain structural members that should have |
| 11 | been replaced and they weren't, that falls on USCI? |
| 12 | A    Yes, sir. |

[Asher deposition, Attachment "B", p. 43]

| 18 | Q    And if F and F or EZTANK failed to do |
|---|---|
| 19 | something, that would be USCI's -- under USCI's |
| 20 | umbrella? |
| 21 | A    Yes, sir. |

[Asher deposition, Attachment "B", p. 43]

| 24 | Q.  Were you ever asked to replace any wind rods? |
|---|---|
| 25 | A.  No, sir. |

[Asher deposition, Attachment "B", p. 45]

TankEZ's owner and Corporate Representative also confirmed that **TankEZ did not make any decisions regarding whether and which support components (including Wind Rods) needed to be replaced**.

| 21 | Q.  Did anybody at TankEZ ever make any decisions |
|---|---|
| 22 | on what riser rods or wind rods or any other |
| 23 | structural members needed to be replaced? |
| 24 | A.  We don't have the authority to decide. |

[Landaverde deposition, Attachment "H", p. 21]

**Page 10**

```
 1      Q.  You didn't have any authority to replace any
 2   parts that you weren't told to replace, did you?
 3      A.  No, sir.
 4      Q.  You weren't an inspector.
 5      A.  No, sir.
 6      Q.  Your company doesn't have any inspectors.
 7      A.  We're not inspectors.
 8      Q.  The inspectors all came from USCI.
 9      A.  Yes, sir.
```

[Landaverde deposition, Attachment "H", p. 78]

TankEZ's owner and Corporate Representative further confirmed that **TankEZ did not make any decisions as to which Wind Rods needed to be replaced, but rather those decisions indeed were made by USCI's inspector**.

```
 6       Q.  And who makes the decision as to which wind
 7   rods need to be replaced?
 8       A.  That would be the inspector, USCI inspector.
 9       Q.  And when -- did you have any input into
10   this -- this scope of work here on the riser rods that
11   needed to be replaced and the wind rods that needed to
12   be replaced?
13       A.  No, sir.
```

[Landaverde deposition, Attachment "H", p. 41]

USCI Supervisor Asher also confirmed **it was USCI's contractual responsibility to "thoroughly inspect" the City's Water Tower (not TankEZ's)**. Supervisor Asher also confirmed the colossal failures by USCI in its inspections of the dilapidated tower.

| 10 | Q    Okay.  And so, we've already said that the |
|----|--------------------------------------------------|
| 11 | company will annually inspect and service the tank, |
| 12 | right? |
| 13 | A    Uh-huh. |
| 14 | Q    That's the contractual responsibilities? |
| 15 | A    Correct. |

**[Asher deposition, Attachment "B", p. 71]**

| 16 | Q    Were there any other subcontractors on the |
|----|--------------------------------------------------|
| 17 | Wilson elevated tank project working for USCI other |
| 18 | than Mr. Ramirez at F & F or EZTANK? |
| 19 | A    Not that I remember. |
| 20 | Q    Okay.  Any outside third party inspectors? |
| 21 | A    No, sir. |
| 22 | Q    All the inspections would have been Gary Pace |
| 23 | or somebody else within USCI? |
| 24 | A    Within a different division of USCI, yes, sir. |

**[Asher deposition, Attachment "B", p. 47]**

USCI Supervisor Asher also confirmed that **USCI failed to perform any inspections in 2013, 2014 and 2017**—contract years 1, 2 and 5, respectively—much less the contractually required "thorough inspections".

| 6 | Q     We know that USCI either failed to inspect or |
| 7 | failed to prepare a Condition Assessment Report in |
| 8 | contract year one and contract year two? |
| 9 | MR. WATERS:  Objection; form. |
| 10 | A     It appears so, yes, sir. |

**[Asher deposition, Attachment "B", p. 76]**

| 22 | Q     All right.  So either U -- USCI failed to do an |
| 23 | inspection in its first and second contract year or it |
| 24 | failed to prepare a report, true? |
| 2 | A     Yes, sir. |

**[Asher deposition, Attachment "B", pp. 71 – 72]**

| 3 | Q     (By Mr. West)  Have you seen an inspection |
| 4 | report for year five, which would be May 1st, 2017 |
| 5 | through April 30th, 2018? |
| 6 | A     No, sir. |

**[Asher deposition, Attachment "B", p. 72]**

USCI's first post-renovation inspection is memorialized in its June 9, 2015, Condition Assessment Report. This Report was deceptive (and simply wrong) insofar as **it falsely reported "_no deficiencies_" in the tank legs or Wind Rods**.

Structural

- Foundation: Foundation appears in good condition and there is no erosion occurring around foundation.

- Legs: No deficiencies noted with tank legs. Paint coating continues to protect the substrate.

**[USCI June 9, 2015 Inspection Report, Attachment "I": Lancaster Exhibit 11, p. USCI 000309]**

**Page 13**

- Riser Rods: No deficiencies noted with riser rods.

- Wind Rods: No deficiencies noted with wind rods.

**[USCI June 9, 2015 Inspection Report, Attachment "I": Lancaster Exhibit 11, p. USCI 000310]**

USCI's one and only other inspection of the water tower occurred on April 20, 2016, and also **falsely represented there were "*no deficiencies*" in the Wind Rods**.



Structural
- Foundation: Foundation appears in good condition and there is no erosion occurring around foundation.
- Legs: No deficiencies noted with tank legs. Paint coating continues to protect the substrate.

**[USCI April 20, 2016 Inspection Report, Lancaster Exhibit 12, p. USCI 000316]**



- Riser Rods: No deficiencies noted with riser rods.

- Wind Rods: No deficiencies noted with wind rods.

**[USCI April 20, 2016 Inspection Report, Attachment "J": Lancaster Exhibit 12, p. USCI 000317]**

**No Wind Rods Were Ever Replaced.** One thing is certain, **none of the Wind Rods were ever replaced as required by contract and condition**. This fact is verified through the testimony of TankEZ's corporate representative (Antonio Landaverde), USCI's Project Supervisor (Jimmy Asher), and USCI's Corporate Representative (Kirt Ervin).

**Page 14**

**TankEZ Testimony.** Landaverde testified USCI never asked TankEZ to replace any Wind Rods.

| 24 | Q.  Were you ever asked to replace any wind rods? |
|----|---------------------------------------------------|
| 25 | A.  No, sir.                                      |

**[Landaverde deposition, Exhibit "H", p. 45]**

**USCI Testimony.** USCI Supervisor Asher confirmed no Wind Rods were replaced.

| 10 | Q    And do we know how many riser rods and wind |
|----|---------------------------------------------------|
| 11 | rods were actually replaced in the renovation? |
| 12 | A    I want to tell you off the top of my head there |
| 13 | was five or six riser rods and I don't believe any wind |
| 14 | rods were. |

**[Asher deposition, Attachment "B", p. 110]**

| 20 | Q    You think there were less? |
|----|----------------------------------|
| 21 | A    No, I don't think we replaced any wind -- wind |
| 22 | rods. |
| 23 | Q     So when the renovation was done, none of the |
| 24 | wind rods were replaced including this one shown in |
| 25 | 1325? |

```
                    Jimmy Asher
                    May 10, 2018                        134
```

| 1 | A    I don't think so. |
|---|------------------------|

**[Asher deposition, Attachment "B", pp. 133 – 134]**

Likewise, USCI's Corporate Representative, Kirt Ervin, testified no Wind Rods were replaced on the Aransas Pass water tower.

> 20       Q.   And you know that no wind rods were
>
> 21   replaced on this project, don't you?
>
> 22       A.   That's what I understand.

**[Ervin deposition, Attachment "K", p. 75]**

**<u>Engineering Expert</u>.** Attachment "D" is the Affidavit (including CV and Rule 26 Report) of Travis Well, PE—Lancaster's retained engineering expert. Engineer Wells confirms his findings and opinions, including (page references are to his Affidavit):

- the critical role of Wind Rods on the water tower structure (p. 2)

- dilapidated condition of the Wind Rods and other components (p. 2 – 3)

- need for replacement of Wind Rods and other components (p. 2 – 3)

- the water tower would have survived the wind forces if the Wind Rods and other structural components of the water tower were replaced or repaired (p. 2)

- impropriety of the inspections of the water tower (p. 2)

- impropriety of the renovation work on the water tower project (p. 2 – 3)

- the water tower collapsed due to wind forces acting upon the degraded and weakened water tower structure (p. 2)

**<u>Lancaster Testimony</u>.** Attachment "L" are deposition excerpts of Herb Lancaster—individual Plaintiff and representative of the corporate Plaintiff.

Herb Lancaster testified and confirms:

- "*Pieces of the water tower went through the building, and the water from inside the tower* [damaged the near and far sides of the building]. [Attachment "L": Lancaster Deposition, pp. 67 – 69].

- "*The building where the water tower fell was not under water when it fell . . .* [the building is] *dock high, and that portion of the block is never flooded or been under water. It wasn't during the storm, and even the subsequent rains after the collapse.*" [Attachment "L": Lancaster Deposition, p. 64].

IV.    **Applicable Legal Standards Do Not Support Summary Judgment.**

    **A.    The procedural standards for summary judgment have not been met.**

The Court certainly is aware of the procedural standards applicable to summary judgment motions. Nevertheless, the standards bear repeating because TankEZ's motion does not warrant summary disposition of the case.

As the summary-judgment movant, TankEZ "bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.,* 485 F.3d 253, 261 (5th Cir. 2007). If TankEZ meets its initial Rule 56(a) burden of establishing the absence of evidence regarding a material fact, Plaintiffs only then must identify specific evidence in the record and explain how that evidence supports Plaintiffs' claims. *Baranowski v. Hart,* 486 F.3d 112, 119 (5th Cir. 2007). In deciding a summary-judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

**B.    Negligence standards are met by the evidence in this record.**

Lancaster presents negligence and gross negligence claims regarding the propriety of the Aransas Pass Water Tower Renovation project performed by USCI and its subcontractor, TankEZ.

Legal duties exist by virtue of the USCI-City contract and the USCI-TankEZ contract, both of which are evidence in this record.

The Fifth Circuit recognizes that Under Texas law, causation generally is a question of fact for the jury. *Gutierrez v. Excel Corp*., 106 F.3d 683, 687 (5th Cir. 1997). "Proof of causation requires more than conjecture or guess." *Mosley v. Excel Corp*., 109 F.3d 1006, 1009 (5th Cir. 1997). However, it need not be supported by direct evidence. *Tompkins v. Cyr*, 202 F.3d 770, 782 (5th Cir. 2000). Circumstantial evidence and reasonable inferences therefrom may form a sufficient basis for a finding of causation. *Id*.  Establishing causation requires facts sufficient for a jury to reasonably infer that the defendants' acts were a substantial factor in bringing about the injury. *Id*.  When the facts presented in the summary judgment record are evaluated, and paired "with other surrounding circumstances," it is appropriate to conclude that "issues of fact preclude an award of summary judgment . . . ." *Flock*, 319 F.3d at 237.

## V.    <u>Brief Summary of MSJ Response.</u>

USCI failed to properly inspect and repair the water tower as per its contract with the City of Aransas Pass. USCI sub-contracted certain work to TankEZ.

The question before the Court is whether TankEZ has conclusively established there are no issues of material fact as to TankEZ's accountability.

If TankEZ has conclusively established there is no evidence of its accountability TankEZ should be dismissed with prejudice, and TankEZ's conduct should not be submitted to the jury as USCI wants to do as a Responsible Third Party.

If TankEZ has not conclusively established there is no evidence of its accountability TankEZ should remain in the case to defend the propriety of its work on the USCI's project for the renovation of the Aransas Pass water tower.

TankEZ should not be dismissed, while at the same time allowing USCI to attempt to avoid its accountability by shifting focus onto its sub-contractor, TankEZ.

USCI's responsibility cannot be denied. USCI controlled the manner, means, details and specifications of the 2015 water tower renovation, including whether and which Wind Rods (and other structural components) were to be replaced. The only issue is whether TankEZ shares in the responsibility for this disastrous project performance.

## VI.    <u>Evidence Precluding Summary Judgment</u>.

The following Attachments are incorporated by reference, and referenced specifically throughout this Response:

**"A":   Lancaster Exhibit 3—USCI-City Contract**
**"B":   Jimmy Asher Deposition (USCI Project Supervisor)**
**"C":   Lancaster Exhibit 4—USCI Pricing List**
**"D":   Affidavit of Travis Wells, PE (Lancaster Expert)**
**"E":   Photographs—Dilapidated Wind Rods and Other Components**
**"F":   Lancaster Exhibit 32—USCI-TankEZ Contract**
**"G":   Lancaster Exhibit 27—USCI Service Request**
**"H":   Antonio Landaverde Deposition (TankEZ Corporate Representative)**
**"I":   Lancaster Exhibit 11—USCI Inspection Report (June 9, 2015)**
**"J":   Lancaster Exhibit 12—USCI Inspection Report (April 20, 2016)**
**"K":   Kirt Ervin Deposition (USCI Corporate Representative)**
**"L":   Herb Lancaster Deposition (Plaintiff and Corporate Representative)**
**"M":   Affidavit of S. Scott West (document authentication)**

The Affidavit of S. Scott West [Attachment "M"] authenticates the referenced Attachments.

## VII.   Response to Motion to Dismiss.

TankEZ alternatively files a Motion to Dismiss (Doc. 41, at pp. 11 – 14). Lancaster offered to dismiss TankEZ without prejudice **if and only if** USCI agreed to not claim TankEZ was negligent. In light of USCI's express desire to designate TankEZ as a Responsible Third Party pursuant to TCPRC §33.004, *et seq.*, the conditions of that offer have failed. (see USCI Response to TankEZ MSJ, Doc. 45 at pp. 7 – 8).

PRAYER

TankEZ Coatings, Inc.'s Motion for Summary Judgment and Motion to Dismiss both should be denied.

Plaintiffs request a trial by jury on all issues of fact and for all other appropriate relief.

Respectfully submitted,

THE WEST LAW FIRM

*/s/ S. Scott West*

S. SCOTT WEST
FBN: 12156
SBN: 21206920
1600 HIGHWAY SIX, SUITE 450
SUGAR LAND, TEXAS 77478
TEL: (281) 277-1500
FAX: (281) 277-1505
scott@westfirm.com

**ATTORNEY-IN-CHARGE FOR PLAINTIFFS**

**OF COUNSEL FOR PLAINTIFFS:**
 Richard P. Hogan, Jr.
 Federal Bar No. 8026
 State Bar No. 09802010
 rhogan@hoganfirm.com
 Jennifer Bruch Hogan
 Federal Bar No. 7187
 State Bar No. 03239100
 jhogan@hoganfirm.com

HOGAN & HOGAN
711 Louisiana, Suite 500
Houston, Texas 77002
713.222.8800–telephone
713.222.8810–facsimile

<u>**CERTIFICATE OF SERVICE**</u>

 I hereby certify that a true and correct copy of **PLAINTIFFS' RESPONSE TO TANKEZ's MOTION FOR SUMMARY JUDGMENT/MOTION TO DISMISS** was served by pursuant to the FRCP upon all counsel of record as follows:

**Mr. Vaughan E. Waters (*USCI*)**
*Thornton, Biechlin, Reynolds & Guerra, L.C.*
One International Centre
100 N.E. Loop 410, Suite 500
San Antonio, Texas 78216-4741
*Via e-filing and/or*
*Via e-mail*

**Mr. Bryan Wendt (*TankEZ*)**
*Burt Barr & Associates*
203 E. Colorado
Dallas, Texas 75203
*Via e-filing and/or*
*Via e-mail*

  On this the 10th day of January, 2019.

    /s/ *S. Scott West*
    **S. SCOTT WEST**

**Page 21**