UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| HERB LANCASTER, et al. | § | |
| | § | |
| | § | CIVIL ACTION NO. 2:17-CV-00293 |
| v. | § | |
| | § | |
| UTILITY SERVICE CO., INC., et. al. | § | |

## DEFENDANT'S RESPONSE TO PLAINTIFFS' OPPOSED MOTION FOR SANCTIONS, AND DEFENDANTS' OPPOSED COUNTER-MOTION FOR SANCTIONS

TO THE HONORABLE NELVA GONZALES RAMOS, UNITED STATES DISTRICT JUDGE:

NOW COMES UTILITY SERVICE COMPANY, INC. ("USCI"), Defendant in the above entitled and numbered cause, and files this Defendant's' Response to Plaintiffs' Opposed Motion for Sanctions, and Defendant's Opposed Counter-Motion for Sanctions; and for cause would respectfully show this Honorable Court as follows:

### I.

### PREFACE

USCI must point out initially that the statement of plaintiffs HERB LANCASTER and H. LANCASTER CO. (jointly referred to as "LANCASTER" or "Plaintiffs") to the effect that their "emergency" motion for sanctions is opposed, but that the request for "emergency consideration" is unopposed, is incorrect. In fact, the undersigned counsel for USCI did *not* agree, or state his non-opposition to, *any* component of Plaintiffs' request for sanctions.

1

That said, however, upon the undersigned's review of Plaintiffs' motion – and of the substantive weakness thereof – USCI has no opposition to a consideration of same at the status conference set for March 6, 2019 in this matter, provided of course this response and counter-motion is heard and considered simultaneously therewith.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

On the night of August 25 - 26, 2017 Hurricane Harvey struck Aransas Pass, Texas and surrounding areas. This hurricane, which ranks among the most powerful to have formed in the Atlantic basin in the past century, made landfall on the Texas Gulf Coast as a category 4 hurricane on the Saffir – Simpson scale, weakening to what was still a category 2 hurricane as it moved through and left Aransas Pass. Included in this damage was the 500,000-gallon elevated water tank on Wilson Avenue in Aransas Pass, which was brought down by the storm. Less than three weeks later plaintiff HERB LANCASTER filed suit against USCI, later joining TANKEZ COATINGS, INC. ("TANKEZ") as a defendant and adding H. LANCASTER COMPANY as a plaintiff. (USCI and TANKEZ had conducted renovation work on this and other water tanks located in Aransas Pass during the period 2013 – 2015.)

Although the discovery deadline per this Honorable Court's amended scheduling order was February 18, 2019, all parties have continued to conduct discovery by agreement herein past that time; indeed, several fact witness depositions – most of them requested by Plaintiffs – are still contemplated at this time. *See, e.g.*, Ex. A (deposition correspondence among counsel).

Mediation took place on Friday, March 1, 2019 in accordance with the amended scheduling order. Plaintiffs' demand at mediation – as they specifically pointed out in their motion – was $9,000,000.00. That sum is more than nine times what USCI views as the

2

economic damages sustained by Plaintiffs by way of Hurricane Harvey. It is more than three times the figure proffered by Plaintiffs themselves, in their own motion, as their economic damages. Perhaps most significant for present purposes, it is well in excess of four times the economic damages given by Plaintiffs' own liability expert Mr. John Tompson (that being the figure $2,036,000.00). See Ex. B (excerpts from deposition of John Tompson). According to Plaintiffs, again in their motion, their settlement demand remains at $9,000,0000.00. The mediator, Mr. Andy Lehrman, declared an impasse but graciously agreed to make time in his schedule for a second mediation session following discovery on the issue of the amount of water discharged from the tank when it collapsed.

### III.

### ARGUMENT AND AUTHORITIES

The undersigned counsel for USCI prefers, always, to avoid jumping to the conclusion of maleficence on the part of opposing parties as an explanation for such parties' conduct. However, when a motion for sanctions is leveled against USCI based on statements and assumptions which are demonstrably false, that conclusion becomes more persuasive, and its avoidance more difficult.

First, and as Plaintiffs freely concede, USCI was physically present at the mediation not only through the undersigned counsel but through the authorized claim representative – Ms. Jill Cross – of Liberty Mutual, which holds the first layer of insurance, in the amount of $2,000,000, of which USCI *is a named insured*. Of that $2,000,000.00, the sum of $500,000.00 is a self-insured retention (SIR) which is the obligation of USCI itself. Ms. Cross had full authority to bind USCI to a negotiated settlement should such a settlement be reached, on mutually agreeable

terms, within the limits of the Liberty Mutual/USCI layer of coverage – *subject to* the disposition of the coverage layer which was omitted by Plaintiffs in their motion.

In that regard, the aforementioned $2,000,000.00 layer was not in fact the bottom layer of USCI's coverage. Scottsdale Insurance Company ("Scottsdale"), which insures TANKEZ, likewise covers USCI as an additional insured (AI) under that same policy. See Ex. C (correspondence from one of Scottsdale's coverage counsel shortly prior to mediation). Scottsdale, in fact, had a coverage counsel, Ms. Peri Alkas (with whom the undersigned had also communicated regarding the AI issue), present at the mediation; in the event, however, Scottsdale was unwilling to contribute any money in settlement at the mediation *either on behalf of its additional insured USCI or its own named insured TANKEZ.* (Plaintiffs, through their counsel, are aware of the AI status of USCI under the Scottsdale policy, having been provided months ago with a copy of USCI's earlier AI correspondence and demand for coverage.)

Plaintiffs complain in their motion as follows: "USCI's stated reason for no authority and no tender of its SIR was that USCI suddenly wanted to know the volume in the water tower at the time of the collapse – an inquiry that USCI made for the first time less than 66 hours before the mediation (and over a week after the court imposed deadline)." Motion, at 4. This is flatly false.

As discussed, it is not the case that USCI had "no authority" to negotiate at the mediation. Authority there was – but USCI and its carriers were under no obligation to simply hand over whatever amount Plaintiffs considered appropriate to settle their case, either with or without information pertaining to the water level in the tank when it collapsed. Indeed, the suggestion that they *were* under such an obligation is itself sanctionably frivolous. And the statement that

4

USCI would have tendered its entire SIR of half a million dollars if it had known the water level in the tank is absurd on its face.

Plaintiffs have built their entire case around the notion that when the tower collapsed it released 500,000 gallons of water (or something close to that), which then slammed against the Lancaster building and caused the damage complained of. That is their theory of the case, a case on which they have the burden of proof. To suggest that Plaintiff's counsel, Mr. Scott West – *who has also represented, for several months, the City of Aransas Pass in a related claim arising out of the collapse of the tower* – would not somehow have had access to this information, simply strains credulity.

But Plaintiffs' argument is disingenuous for a more significant and basic reason than that. Far from waiting until 66 hours before mediation to "inquire", *three weeks* before the mediation Defendants took the deposition of Mr. Travis Wells of Haag Engineering, one of two designated liability experts of Plaintiffs who co-authored an expert report. The other expert, Mr. Paul Williams (also of Haag), was to have been deposed that same date; his deposition, however, was postponed twice at the request of and as an accommodation to the witness and Plaintiffs, due to a bronchial condition he was experiencing.

Mr. Wells, at his deposition, was asked specifically about the water level but testified that he had no idea how much water was in the tank at the time of the collapse; he could not say "whether it was full, half full, quarter full. . ." Ex. D (excerpts from the deposition of Travis Wells), at 219. He felt the Lancaster building and property had been damaged by water from the tank, but according to him this was based simply on a "visual inspection." *Id.*, at 220. For a more in-depth analysis Mr. Wells expressly deferred to Mr. Williams: "I will let Paul [Williams]

5

talk about it more because he has been with Haag who has been doing wave action analysis for 90 years, 95 years. He can talk about it more." *Id.*, at 234.

Mr. Williams did indeed "talk about it more" when he was finally deposed on February 27th, but what he had to say did not exactly fit Mr. Wells' narrative. In fact he testified as follows:

> Q. [by Mr. Waters]: Okay. So let me understand – make sure I understand correctly.
>
> You dealt with forces and pressures and resistance, the physics-related matters that we talked about, with respect to the tower itself and the collapse of the tower?
>
> A. [by Mr. Williams]: Yes.
>
> Q. You did not deal with those kind of forces with respect to what actually happened to the building itself. Is that –
>
> A. That was not part of our report.
>
> Q. Okay. As a matter of fact, if you look at the report, on page 3 of the report, there is a section called background information.
>
> A. Yes.
>
> Q. And the second sentence of that paragraph reads: water spilt from the collapsed tank and damaged nearby structures including the place of business owned by Mr. Herb Lancaster.
>
> So Mr. Lancaster's place of business and apparently some other unidentified nearby structures are said to have been damaged by water spilt from the collapsed tanks. Is that how you read that sentence?
>
> A. Yes.
>
> Q. I don't see anywhere else in this report where the damage to the Lancaster building is actually referenced at all.
>
> A. That's probably correct.
>
> . . .

6

> Q. All right, okay, okay. Certainly you would not have done any rigorous analysis or equations or anything of that nature regarding the building, the structure of the building, what forces were operating on the building itself. That was outside the scope of what you were called upon to do?
>
> A. The only thing I did was a visual from inside the building and from the tower site. That was – that was it.
>
> Q. Okay.
>
> A. And again, it's not something that – that I was asked to form opinions on within this report.
>
> . . .
>
> Q. Okay. Do you have any opinions, observations or conclusions regarding either the collapse of the water tower or the damage to the building that are not contained either in your report or in what we have talked about up until now in your deposition?
>
> A. I think we have covered it.

Ex. E (rough draft excerpts from deposition of Paul Williams), at 2-4. It was not until that deposition – two days before the mediation – that Defendants knew for certain that Plaintiffs had neither direct record evidence of the amount of water in the tank, nor valid scientific evidence from which even an approximate estimate of the water volume at the time of collapse could be established; *indeed, this was not even part of what Haag was retained to do.*

It should come as no surprise at all that Plaintiffs failed to cite a single authority in support of their motion – an omission which, in and of itself, is in violation of Local Rule 7.1 (B) of the U.S. Southern District of Texas ("Opposed motions shall . . . [i]nclude or be accompanied by authority . . .") The U.S. Fifth Circuit has explained that federal courts "have inherent powers which include the authority to sanction a party or attorney when necessary to achieve the orderly and expeditious disposition of their dockets." *Scaife v. Associated Air Center, Inc.*, 100 F.3rd 406, 411 (5th Cir. 1996) (citation omitted). As a general rule, however, the standards for

7

imposing sanctions pursuant to a court's inherent powers is very high. *Crowe v. Smith*, 151 F.3rd 217, 236 (5th Cir. 1998). More typically sanctions are based on Rule 16(f)(1), Fed. R. Civ. P. in cases in which a party or its attorney "fails to obey a scheduling or other pre-trial order . . ."

Thus, in *Westbrook v. Dallas County*, 2017 WL 2504994 (N.D. Tex. 2017) sanctions were deemed appropriate where the defendants and their attorney simply failed to appear at all for mediation, in violation of an express order of the court stating specifically who must be present. *Westbrook*, at *1, *5. Conversely, in *Thomas v. Napolitano*, 2012 WL 13019644 (N.D. Tex. 2012) the court denied sanctions in recognition of the fact that two Assistant United States Attorneys who appeared at a mediation, while not executive officers of the Department of Homeland Security (which had been sued by and through its Secretary, Janet Napolitano), nonetheless were imbued with authority to bind the DHS to a negotiated settlement. *Thomas* at *1 - *2.

This Honorable Court's amended scheduling order provides, with respect to the mediation, as follows: "The parties have been ordered to mediate no later than March 1, 2019. If the case is not settled at that time, the parties have been ordered to appear for a status conference on March 6, 2019 at 9:00 a.m." USCI appeared at the mediation by and through both its undersigned counsel and the Liberty Mutual claim representative Ms. Cross; in addition, its Senior Corporate Attorney, Mr. James M. Terranova and AIG excess claim representative Ms. Maliza Joseph-Gabriel were available telephonically. Again, USCI had no means of compelling Scottsdale to honor its AI obligations at the mediation short of filing a declaratory judgment action to attempt to compel Scottsdale to do so – a move which was neither feasible or required.

At bottom, Plaintiffs' complaint is that the case did not settle on terms which they would regard as favorable. Contrary to their meritless accusations of bad faith against USCI, Plaintiffs

8

themselves have effectively established their own bad faith by not only conceding *but affirmatively emphasizing* the fact that they would not consider settling even for the full amount of their economic damages – and this notwithstanding the substantive legal and factual weaknesses of their case.

## IV.

### COUNTER-MOTION FOR SANCTIONS

Rule 11(b), Fed. R. Civ. P. prohibits the filing of any written motion which is presented for any improper purpose; in which the legal contentions are not warranted by existing law or by a non-frivolous argument for changing existing law; or in which the factual contentions lack evidentiary support.

In view of the foregoing, USCI respectfully submits that this Honorable Court could properly conclude that, by filing their motion for sanctions herein, Plaintiffs have violated each of these standards. This is most conspicuously so in terms of their misrepresentations to the Court as to the capacity and authority of the mediation participants. USCI leaves it to this Honorable Court's discretion to determine whether, and in what amount, an appropriate sanction should be leveled against Plaintiffs for necessitating the instant response to their baseless motion.

WHEFORE, PREMISES CONSIDERED, USCI respectfully prays that Plaintiffs' Motion for Sanctions be denied in its entirety; for the imposition of appropriate sanctions according to the discretion of the Court against Plaintiffs, for the filing of same; and for such other and further relief, at law or in equity, to which USCI might show itself justly entitled.

Respectfully submitted,

**THORNTON, BIECHLIN, REYNOLDS & GUERRA, L.C.**

One International Centre
100 N.E. Loop 410, Suite 500
San Antonio, TX  78216-4741
Telephone: (210) 342-5555
Facsimile: (210) 525-0666

BY: _____
Vaughan Waters
State Bar No. 20916700
E-mail: vwaters@thorntonfirm.com
**ATTORNEYS FOR
UTILITY SERVICE CO., INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing instrument was served upon the attorneys of record of all parties to the above cause in accordance with the Federal Rules of Civil Procedure 5(b)(1) and Local Rule 5.3, on this 5th day of March, 2019.

S. Scott West
The West Law Firm
1600 Highway Six, Suite 450
Sugar Land, Texas 77478
*Attorneys for Plaintiff, Herb Lancaster*

Bryan Wendt
Burt Barr & Associates
203 E. Colorado
Dallas, Texas 75203
*Attorneys for Defendant, TankEZ Coatings, Inc.*

_____
Vaughan E. Waters